UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AMY L. CLINE,<br>  Plaintiff, | )<br>)<br>) |
| v. | )  CAUSE NO.: 3:19-CV-1169-PPS-JEM |
| ANDREW SAUL, Commissioner of the<br>Social Security Administration,<br>  Defendant. | )<br>)<br>)<br>) |

**FINDINGS, REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE PURSUANT TO
28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Amy L. Cline on December 19, 2019, and Plaintiff's Brief [DE 17], filed July 8, 2020. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On September 16, 2020, the Commissioner filed a response, and Plaintiff filed a reply on October 7, 2020.

On April 28, 2020, Judge Philip P. Simon entered an Order [DE 12] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant Motion pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the decision of the Administrative Law Judge be reversed and the case remanded for further proceedings.

**I.  Background**

On June 20, 2016, Plaintiff filed an application for benefits alleging that she became disabled on November 18, 2014. Plaintiff's application was denied initially and upon reconsideration. On September 24, 2019s, Administrative Law Judge ("ALJ") Kathleen Fischer

1

held a hearing at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On December 26, 2018, the ALJ issued a decision finding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The ALJ made the following findings under the required five-step analysis:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant engaged in substantial gainful activity during the period of April 2014 through December 2015; however, there has been a continuous 12-month period during which the claimant did not engage in substantial gainful activity. The remaining findings address the period the claimant did not engage in substantial gainful activity.

3. The claimant has the following severe impairments: history of myocardial infarction, cardiomyopathy, congestive heart failure and obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity ("RFC") to perform sedentary work as the claimant is able to sit for six hours and stand and/or walk for two hours in an eight hour workday, except: she can occasionally lift and/or carry twenty pounds occasionally and ten pounds frequently. She is unable to climb ladders, ropes, or scaffolds, may occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl, and must avoid concentrated exposure to hazardous conditions and to pulmonary irritants such as dust, fumes and gasses.

6. The claimant is unable to perform any past relevant work.

7. The claimant was a younger individual age 18-44 on the alleged disability onset date.

8. The claimant has a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has

        transferable job skills.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.     The claimant has not been under a disability, as defined in the Social Security Act, from March 15, 2014, through the date of the ALJ's decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence."

*Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate their analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Analysis

Plaintiff argues that the ALJ erred in evaluating the opinion of Plaintiff's treating physician and applied a legally insufficient analysis of Plaintiff's subjective symptoms. The Commissioner argues that the opinion is supported by substantial evidence.

Plaintiff argues that the ALJ erred analyzing the opinions of his treating sources. For claims like this one filed prior to March 27, 2017, the ALJ "should give controlling weight to the treating

4

physician's opinion as long as it is supported by medical findings and consistent with substantial evidence in the record." *Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2) (replaced by 20 C.F.R. §404.1520c for claims filed after March 27, 2017); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018)); *see also Gudgel*, 345 F.3d at 470; *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). If the ALJ declined to give a treating source's opinion controlling weight, she should still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6). "[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

The ALJ addressed a medical opinion questionnaire completed by Plaintiff's treating cardiologist in August 2018 in which he opined that Plaintiff is limited in her ability to work including, among other limitations, that she would need a job that enabled her to shift position at will, take four unscheduled 15 minutes breaks during an eight hour work day, and elevate her lower extremities to hip level for half of the work day. He also opined that Plaintiff would likely have to miss three days of work per month because of her symptoms. The same doctor opined in September 2016, December 2016, and January 2017 that Plaintiff was unable to work during that time period due to symptoms related to her heart disease. The ALJ stated that she gave the physician's "assessments little weight, as they are not supported by the record, which indicated that the

5

claimant has full strength, range of motion and sensation of her upper and lower extremities with no signs of swelling," and listed a number of other normal or improved physical findings, as well as finding "the claimant has done well since undergoing surgery to implant a defibrillator." She also found that the physician's "narrative statements are conclusory and do not contain and (sic) specific reasons as to why the claimant would be unable to work." The ALJ did not mention the fact that the treating physician was a cardiology specialist, the length of the treating relationship or any of the other factors that are to go into the analysis.

The Commissioner argues that the ALJ properly considered the cardiologist's opinion and gave appropriate reasons for assigning it little weight, since it was not supported by the record, arguing that Plaintiff's lower extremities were not consistently and her edema was sometimes "mild." However, the fact that Plaintiff experienced swelling at all – let alone the numerous records reflecting swelling – is inconsistent with the ALJ's statement that Plaintiff does not experience swelling, *see Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (discussing *Chenery* doctrine, i.e., an agency's lawyers may not defend its decision on grounds not supplied in the decision), and both this argument and the ALJ's analysis raise concerns that the ALJ is impermissibly substituting her own judgment for that of medical professionals. *See Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) (warning ALJs to avoid the temptation of playing doctor and advising ALJs to rely on expert opinions); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (explaining that ALJs must avoid making their own medical findings). This concern is exacerbated by the ALJ's conclusion that the fact that Plaintiff's implanted "defibrillator has gone off only once . . . suggests that [she] is capable of being more active during the day than alleged," apparently suggesting that it is advisable for Plaintiff to push herself until her heart requires frequent mechanical intervention.

Rather than giving weight to the

6

opinion of Plaintiff's treating cardiologists, the ALJ gave "great weight" to the opinion of the non-examining state agency medical consultants. Not only did the ALJ fail to consider all of the required factors when deciding what weight to give Plaintiff's treating specialist, but ALJs are directed to "give more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not examined [her]." 20 C.F.R. § 404.1527(c)(1). Likewise, "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel*, 345 F.3d at 470 (finding error where "the ALJ did not explain how the evidence in the record contradicts [the examining physician]'s diagnosis"); *see also Vanprooyen v. Berryhill*, 864 F.3d 567, 572-73 (7th Cir. 2017) (finding error where "without any logical explanation, the administrative law judge gave substantial weight to the opinions of consulting physicians who had never examined [the plaintiff], saying only that they had provided "a good synopsis of the evidence" and that "their opinions are consistent with the overall record").

The ALJ also explicitly disregarded Plaintiff's testimony that she needs to elevate her legs during the day, since "the record does not indicate any need for her to do so, as her lower extremities have been without swelling" and "no physician has noted that she needs to elevate her lower extremities during the day." Not only did Plaintiff's treating cardiologist specifically opine that Plaintiff would be limited in her ability to work because of her need to elevate her legs, as described above, but Plaintiff's treating podiatrist also recommended that Plaintiff elevate her legs. Although it may be, as the Commissioner suggests, that the recommendation was in the context of a temporary need for elevation during recovery from injury, the notes span several months and refer to elevation "as needed" because of swelling and pain, without specified duration, *see, e.g.*,

7

AR 1031, 1065, and belies the ALJ's statement.. Furthermore, as mentioned above, the record also contains multiple instances of swelling in Plaintiff's lower extremities.

The ALJ is required to consider Plaintiff's allegations of pain and imitations and "evaluate whether [Plaintiff's] statements are consistent with objective medical evidence and the other evidence" and "explain" which symptoms were found to be "consistent or inconsistent with the evidence." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017), at *6, *8; *see also Ghiselli v. Colvin,* 837 F.3d 771, 777 (7th Cir. 2016) ("[T]he absence of objective medical corroboration for a complainant's subjective accounts of pain does not permit an ALJ to disregard those accounts."); *Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014) ("[T]he ALJ erred in rejecting [the plaintiff]'s testimony on the basis that it cannot be objectively verified with any reasonable degree of certainty. An ALJ must consider subjective complaints of pain if a claimant has established a medically determined impairment that could reasonably be expected to produce the pain."). In this case, the ALJ discounted the opinion of the treating cardiologist in part because he opined that Plaintiff needed to elevate her legs for multiple hours a day, but found Plaintiff's statements about her limitations to be less than credible because "no treating physician opined that she needs to elevate her lower extremities during the day." She also discounted the statements of both Plaintiff and her treating cardiologist because "her lower extremities have been without swelling," despite myriad records of times when Plaintiff *did* experience swelling. There is no logical bridge to follow between the evidence and the ALJ's conclusions.

The ALJ erred in her analysis of Plaintiff's treating physician and of Plaintiff's own report of her symptoms, completely failing to draw a logical bridge from the evidence to her conclusions, and the Court recommends that the case be remanded to correct these errors. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in the

8

record, and, if necessary, give the parties the opportunity to expand the record so that she may build a 'logical bridge' between the evidence and his conclusion.").

## IV. Conclusion

For the foregoing reasons, the Court **RECOMMENDS** that the District Court **GRANT** the relief requested in Plaintiff's Memorandum [DE 15] and **REMAND** this matter for further proceedings consistent with this Report and Recommendation.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

SO ORDERED this 21st day of December, 2020.

s/ John E. Martin_____
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:   All counsel of record
      Judge Philip P. Simon